The Ohio and Mississippi Railroad Company *v.* Fitch.

PLEADING—RECEIVER.—Where a railroad company, in answer to an action to recover the value of animals killed by its machinery, desires to set up the fact that its road is in the possession of, and be-

The Ohio and Mississippi R. R. Co. *v.* Fitch.

ing operated by, a receiver appointed by a Federal Court, the answer should be accompanied by the original or a copy of the order of the latter Court for the appointment of the receiver.

RAILROAD—RECEIVER.—The mere appointment of a receiver, with the powers usually given to a receiver in chancery, does not relieve the railroad company from liability to suit. The receiver operates the road subject to that liability.

SAME—STATUTES CONSTRUED.—The act of *March* 4, 1863, (Sess. Acts 1863, p. 25,) is probably valid where it operates alone on persons and rights under the laws of the State of *Indiana,* but, so far as it undertakes to empower the State Courts to control the earnings of railroads which have been placed in the care and management of receivers, by orders of Federal Courts, it is inoperative and void.

In such cases, applications for relief should be addressed to the proper Federal Court.

JURISDICTION—HABEAS CORPUS, &c.—As to the cases in which the State Courts, upon writs of *habeas corpus,* or otherwise, may inquire into the conduct of officers of the *United States,* and discharge or recommit persons held in custody by them, the reader is referred to the opinion herein at length.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—*Dewit C. Fitch* sued the *Ohio* and *Mississippi* railroad company for stock killed by the machinery of the corporation.

The defendant answered as follows:

1. The general issue.

2. That on the 9th of *April,* 1860, said railroad was put into the hands of one *Alsop,* as receiver, by the Circuit Court of the *United States,* sitting in the District of *Indiana,* in whose hands the road and its income still remained, and by whom the road was operated. No copy of the order or appointment was set forth, nor was the original filed.

A demurrer was sustained to this paragraph of the answer.

On the trial there was judgment for the plaintiff.

The evidence made a clear case of wrongful killing, so that, on the merits, there can be no reversal of the judgment against the company. We think the demurrer to the second paragraph of the answer was rightly sustained. It did not sufficiently set out the appointment of *Alsop* as receiver. See Edwards on Receivers, Ed. 1857, p. 141. We think a copy should have been filed with the answer, or the original. But aside from this objection, we do not think the existence of the receiver, conceding him to have possessed the powers usually given to a receiver in chancery, relieved the corporation from liability to suit. The corporation still existed, was the owner of the road, and the law made that corporation liable for stock killed under certain circumstances. The receiver operates the road subject to that liability. See *Heron v. Vance*, 17 Ind. 595. We can not, from anything in the answer, regard *Mr. Alsop* as a receiver under the State statute. Up to and including the judgment against the corporation, the proceedings were conformable to the general law of the State on the subject of compensation for stock killed on railroads. But the proceedings were carried further. The plaintiff attempted to enforce collection of the judgment, not by levy and sale, as perhaps he might have done, of the road, but by a process analogous to that of garnishment, in attachment cases, viz: obtaining an order from the State Court, upon the receiver, or a subordinate of his, for the payment of the judgment out of money received in operating the road, and the Court below ordered it to be thus paid. This was done under a statute of the State, as follows:

"An act to provide compensation to the owners of animals killed or injured by the cars, locomotives, or other carriages of any railroad company in this State; and to enforce the collection of judgments rendered on account of the same; and to repeal all laws inconsistent therewith.

"Section 1. *Be it enacted by the General Assembly of the*

The Ohio and Mississippi R. R. Co. *v.* Fitch.

*State of Indiana,* That lessees, assignees, receivers, and other persons running or controlling any railroad, in the corporate name of such company, shall be liable jointly or severally with such company for stock killed or injured by the locomotives, cars, or other carriages of such company, to the extent, and according to the provisions of this act.

"Sec. 2. That whenever any animal or animals shall be, or shall have been killed or injured by the locomotives, cars, or other carriages used on any railroad in, or running through this State, whether the same may be, or may have been, run and controlled by the company, or by the lessee, assignee, receiver or other person; the owner thereof may go before some justice of the peace of the county in which such killing and injuring occurred, and file his complaint in writing, and such justice shall fix a day to hear said complaint, and shall cause at least ten days' notice to be served on the railroad company, by the service of a summons, by copy, on any conductor of any train passing into or through said county; but in all cases where the value of any animal or animals, so killed or injury done, shall exceed 50 dollars, the owner or owners of any such animal or animals may file his or their complaint, and prosecute his or their claim, before such justice of the peace, in the court of common pleas, or in the circuit court of the county, at his or their option.

"Sec. 3. When such complaint shall be filed in the court of common pleas, or in the circuit court, the clerk of said court shall issue a summons thereon, as in other cases; which summons shall be served by the sheriff on the railroad company defendant, at least ten days before the first day of the term at which such cause is to be heard, and such summons may be served by copy on any conductor on any train on said road, passing into or through said county.

"Sec. 4. The action may in all cases contemplated by this act, be brought against the railroad as defendants, whether

The Ohio and Mississippi R. R. Co. *v.* Fitch.

the same is or was being run by the company, or by a lessee, assignee, receiver, or other person in the name of such company.

"SEC. 5. On the hearing of any such cause, the court or jury trying the same shall give judgment for the plaintiff or plaintiffs for the value of the animal or animals killed or the injury done, without regard to the question whether such killing or injury was the result of willful misconduct or negligence, or the result of unavoidable accident. And if such cause be commenced in the common pleas or circuit court of the county in which such animal or animals are killed or injury done, the court shall, on motion of the plaintiff or plaintiffs, on the rendition of such judgment, or afterwards at any time, when notice of such motion has been served on the railroad company defendant, at least ten days before the first day of the term of the court at which such motion is to be heard, order a writ to issue, directed to the sheriff of the proper county, for any agent, conductor, employee of such railroad company; or of the lessees, receivers or assignees of such company, named in such motion, to appear forthwith, or at such time as the court may direct, and answer upon oath as to the amount of money in their hands, if any, belonging to such company, or such assignees, lessees, receivers, as aforesaid, and also as to the probable amount of money received by such agents, conductors or employees as aforesaid, belonging to such railroad company, lessees, assignees, or receivers as aforesaid. And if such agent, conductor, or employee as aforesaid, shall answer that he has, or that they have any such money, or are in the constant receipt of money, as such agent, conductor, or employee as aforesaid, the court shall order such agent, conductor, or employee as aforesaid, to pay into the clerk's office of such court, at such times as many be named by the court, such portions of the money so held or received as aforesaid, not exceeding one-

The Ohio and Mississippi R. R. Co. *v.* Fitch.

half the amount thereof, as may be deemed just by the court, until such judgment and cost is fully paid and satisfied.

"SEC. 6. Any person obtaining a judgment before a justice of the peace, for any animal or animals killed or injured by the cars, locomotives, or other carriages of any railroad in the State, may, upon the filing of a certified transcript of such judgment in the office of the clerk of the common pleas court of the county in which such animal or animals are killed or injured, and upon the clerk of such court entering the same on the Order Book thereof, may, upon notice and motion made in such court, as specified in the fifth section of this act, be entitled to the order and proceedings as therein specified.

"SEC. 7. This act shall not apply to any railroad securely fenced in, and such fence properly maintained by such company, lessee, assignee, receiver, or other person running the same.

"SEC. 8. That any agent, conductor, or employee, who shall fail, refuse or neglect to perform or obey the orders of the court, as specified in this act, shall be deemed guilty of contempt of the court, and fined in any sum not exceeding 500 dollars, to which may be added imprisonment in the county jail for a period not exceeding six months.

"SEC. 9. All laws or parts of laws in conflict with the provisions of this act, are hereby repealed.

"SEC. 10. Whereas, an emergency exists for the immediate taking effect of this act, the same shall be in force and take effect from and after its passage."

For future, as well as present convenience, we have copied the act entire.

It will be observed that this statute conforms to the previous general law on the subject, except that it extends the right of action against lessees, &c., and allows a garnishment of fund, &c.

Now, this statute may be operative in every particular, perhaps, though we do not decide the point, where it operates alone upon persons and rights under the laws of the State of *Indiana.* We doubt not that a suit might be authorized against a receiver appointed by, and acting in this State, under a State Court and a State law.

But, in this case, it appears by an agreed statement of facts, that the *Ohio* and *Mississippi* railroad, with all its machinery, is in the possession of *Joseph W. Alsop,* as receiver, who is charged with the duty of running the road and accounting for the proceeds thereof to the Circuit Court of the *United States* in the District of *Indiana,* by which Court he was appointed, and which proceeds, by order of that Court, have a particular direction by appropriation. Such being the case, we take it, those proceeds are beyond the control of the State tribunals. The *United States* Court possesses jurisdiction in certain suits against that road. In cases where it has jurisdiction, its judgments become liens, and its officers may seize and sell property; and when property is thus seized by the officers of that Court, it can not be taken out of their custody by subsequent process from a State Court. The jurisdictions are distinct. *Taylor* v. *Carryl,* 20 How. (U. S.) Rep. 583. But the possession of the receiver of that Court is the possession of that Court. The receiver is but an officer of the Court. Edwards on Receivers, p. 12.

Had the plaintiff proceeded *to sell any interest in the road* as a means of collecting his judgment at law, the sale would doubtless have been subject to the right of possession of the receiver, and, hence, would not have interfered with him. See Edwards on Receivers, 2d ed., pp. 115, and 145 *et seq.* But as the plaintiff elected to proceed against the receiver we think he should have taken one of the two following courses:

1. He might have applied to the proper Circuit Court of the *United States* for leave to sue the receiver; or,

2. Which would have been the more expeditious and economical course, he might have applied to the proper *United States* Court for an order from that Court upon the receiver to pay the judgment. Edwards, *supra*, p. 145; Red. on Railways, 2d ed., p. 573, sec. 6.

Decisions in analogous cases strengthen the view above taken. As property in custody under judicial process from a State or *United States* Court can not be taken by virtue of process from any other Court; so a person in custody under judicial process from a State Court can not be taken by such process from the Federal Courts, and *vice versa*. In *ex parte Dorr*, 3 How. U. S. Rep. 103, Judge *McLean* says: "Neither this nor any other Court of the *United States*, or judge thereof, can issue a *habeas corpus* to bring up a prisoner who is in custody under a sentence or execution of a State court for any other purpose than to be used as a witness. It is immaterial whether the imprisonment be under civil or criminal process." So in *Ableman* v. *Booth*, 21 How. U. S. Rep. 506, where a person was in custody upon process duly issued, upon an affidavit, by an *United States* Commissioner, he being a judicial officer, it was held that he could not be taken from the custody of the *United States* Marshal by process from a State Court. This is the point decided in the case, because such were the facts upon which the decision was made. See Perk. Pr. p. 475; see 2 Story on the Cons., sec. 1,757. It has teen sought to extend the operation of this *Ableman* case beyond its facts. It is claimed that a person in the custody of an officer of the *United States*, even without judicial process, is in the custody of the government of the *United States*, and beyond relief by a State Court.

It is contended that if a *United States* Marshal should, of his own volition, without any process, seize and imprison a negro, or any other person, and claim to hold him as a fugitive slave, the Marshal would not, according to the case of

*Ableman* v. *Booth*, be liable to answer to a State writ of *habeas corpus* for the release of the arrested person. This is a new interpretation of that case, and can not, we think, as a general proposition, be correct.

The great leading fact in these cases should never be forgotten, that our citizens all the time live territorially, within two governments, viz: the State and Federal; and that the former possesses all power over the citizen not granted to the latter. This is evident from the fact that prior to entering into the Union the States were independent, foreign sovereignties. They were conceded to be such. "When the constitution was ratified, *Rhode Island* and *North Carolina*, from honest but mistaken convictions, for a moment withheld their assent. But when Congress proceeded solemnly to enact that the manufactures of those States should be considered as foreign, and that the acts laying a duty on goods imported and on tonnage should extend to them, they hastened, with a discernment quickened by a sense of interest, and at the same time honorable to their patriotic views, to unite themselves to the Confederation." Federalist, 2d ed., p. 6. Further, we observe, neither the constitution of the *United States* nor any act of Congress gives to the Federal Courts, in terms, exclusive jurisdiction in such cases as have been mentioned; and Judge *Nelson*, of the *United States* Supreme Court, in 1851, seems to rule that a holding under the authority of the *United States*, to exclude the jurisdiction. of the State Courts, must be a holding under legal process. He says: "In such a case, that is, when the prisoner is in fact held under process issued from a Federal tribunal," &c. So, Judge *McLean*, in *Norris* v. *Newton*, 5 McLean, 92; Hurd on Habeas Corpus, *in fra*. Take practical illustration of the doctrine contended for. Suppose the President of the *United States* should issue to the *United States* Marshal for *Indiana* an order as follows:

SIR: The *Rev. A. W.*, of *Indianapolis*, does not preach the

true gospel; the Governor of the State is guilty of undignified conduct; the Judge of the *Marion* Circuit Court has decided a case erroneously; *Mr. C. B.*, merchant, charges his customers too high for goods; you will, therefore, arrest those men and place them in confinement till further orders. Would the State Courts be powerless to afford relief? Suppose the above order was addressed to the Postmaster, and that he had made the arrests; being a *United States* officer, would the State Courts be deprived of jurisdiction? Now, where *U. S.* military officers make arrests, without judicial writs, claiming that the persons arrested are soldiers, it has been the usage of State Courts, in nearly, if not in every State in the Union, to take jurisdiction and grant discharges upon *habeas corpus*. But see *Spangler's* case, 2 Am. L. Reg., N. S., p. 598. Judge *Hoffman*, of *New York*, so late as 1861, in *Dodd's* case, 9 Am. L. Reg., p. 65, says: "Whatever doubts Chief Justice *Kent* and Judge *Story* entertained of the right of State Courts and State Judges to hold jurisdiction of the matter; see 1 Mason, 86; 9 John. Rep. 276; our Supreme Court explicitly and fully recognized the power and the duty of the State Judges to give a detained party, enlisted under the laws of the *United States*, the benefit of a *habeas corpus*. In the matter of *Carlton*, 7 Cowen 471, (1827,) the Court declares that the enlistment of a minor, without consent of his parent or guardian, was void under the act of Congress, and that he might be discharged by State authority. This doctrine has been acted upon by Judges of this State from that time to the present." See, also, *Disinger's* case, 12 Ohio St. Rep. 256; *Wantlan* v. *White*, 19 Ind. 470. Ought not the officer, in all cases, to show to the State Court the authority by which he detains in custody, that the Court may judge whether it is legal or not on its face? And may not the State Court then pass upon this question?

And if the return shows the party to be held by a simple

arbitrary arrest, may not the Court of the State to which government the individual originally belonged, and now *prima facie* belongs, hear evidence to ascertain if he has been taken legally into the custody of another government.

The Supreme Court of *New Hampshire* has said: "If the laws of the *United States* justify the detention of the applicant, there is nothing illegal. If they do not, it is not a case arising under the laws of the *United States*, although it may be under color or pretense of authority by virtue of those laws. But a mere pretense of authority under the laws of the *United States* is no better than any other pretense. It neither confers an exclusive jurisdiction on the Courts of the *United States*, nor ousts the ordinary jurisdiction of the Courts of this State. Nor can it make any difference that the illegal imprisonment, if there be one, is by an officer of the *United States* army. The Courts of the *United States* have no exclusive jurisdiction over their officers;" citing 11 Mass. Rep., pp. 63 and 67; *The State* v. *Dimick*, 12 N. H. Rep. 197; see, also, *Norris* v. *Newton*, 5 McLean 92; *Disinger's* case, 12 Ohio State Rep., p. 256, and Hurd on Habeas Corpus, p. 162 *et seq.*, where the earlier cases in the several States of the Union are collected.

It may be observed that while the judges of the *United States* Courts are worthy of the utmost confidence, still the establishment of the doctrine of their exclusive jurisdiction in the cases of *habeas corpus* mentioned would be cause for deep regret, inasmuch as, on account of the fewness in number and remoteness of locality of those judges, justice would thereby be removed far away from almost every man's door, and would be obtained, rarely at all, and when it was, only at great expense and delay. Practically the doctrine would favor arbitrary power against the rights and liberty of the citizen, and the centralization of power in the Federal Government at the expense of the sovereignty of the State.

*Per Curiam.*—The judgment against the railroad company is affirmed. The proceedings against the receiver and station master are reversed to be dismissed, with costs, &c.

*Theodore Gazlay* and *Carter Gazlay*, for the appellants.

*George B. Fitch*, for the appellee.

*Theodore Gazlay* and *Carter Gazlay*, for the appellants.

*George B. Fitch*, for the appellee.