ASA HOPKINS *vs.* WILLIAM CONNEL and G. A. WASHINGTON.

April Term, 1875.

RECEIVER OF DELINQUENT RAILROAD—PUBLIC AGENT—LIABILITY. — The receiver of a delinquent railroad, appointed by the governor of the state, under 1852, 151, 5, is a public agent, and, as such, not liable for the wrongs or negligence of his employés, but only for his own wrongful acts or delinquencies.

SAME—ISSUES AND PROFITS OF THE ROAD.—To reach the issues and profits of a railroad in the hands of a receiver appointed by the governor, the claimant must be able to show that his claim falls within the "costs and expenses" incident to the receivership, and which are alone authorized to be deducted by 1852, 151, 5.

SAME—EVIDENCE—RECOVERY AGAINST THE RAILROAD COMPANY.—A judgment recovered against the railroad company is no evidence against the public receiver of the railroad.

*Jno. A. Campbell,* for complainant.
*Ed. Baxter* and *J. A. Cartwright,* for defendants.

THE CHANCELLOR :—The original bill was filed on the 6th of April, 1871, by the complainant, as a judgment creditor of the Edgefield & Kentucky Railroad Company by judgment recovered before a justice of the peace for $50, and as the assignee of three other judgments against that company, recovered by the assignors before the same justice on the same day, amounting together to $183.60. These judgments were all recovered on the 7th of June, 1870, for stock previously killed by the railroad trains. The bill was against William Connel alone, as the receiver of the Edgefield & Kentucky Railroad Company, by appointment of the governor of the state of Tennessee, under the internal improvement laws of the state, which authorize the execu-

tive to take control in this mode of railroads to whose construction state aid has been granted, where the companies fail to meet the interest on the bonds issued. The state is a statutory mortgagee of the road, with all its rolling stock, fixtures, and property, with power to take possession in this mode upon default of the company.

The object of the bill was to have these judgments paid out of the profits of the road in the hands of the defendant as receiver. The defendant answered, insisting that the judgments were recovered for cattle killed by the trains previous to his appointment as receiver, and that neither he nor the funds in his hands were liable for such losses. Afterwards Connel resigned the position of receiver, and G. A. Washington was appointed in his place. Thereupon the complainant filed a supplemental bill to bring him before the court. Washington demurred to the bill on various grounds, but his demurrer was overruled. He answered, stating that the moneys which had been turned over to him by his predecessor in office had all been used in paying the expenses incurred by such predecessor; that, as to the moneys received directly by him, he had settled his accounts monthly with the comptroller of the state according to law, and had made a final settlement with him and paid over the balance found in his hands, and now had no funds of the receivership. Proof has been taken on both sides, not much to the point however, and the cause has now been heard and argued on the merits.

The weight of authority undoubtedly is that a receiver of property, under the appointment of a court, cannot be sued, so as to reach the property itself, without permission of the appointing court, or in the cause in which the appointment is made. *Angel* v. *Smith*, 9 Ves. 335; *Wiswall* v. *Sampson*, 14 How. 52; *Noe* v. *Gibson*, 7 Paige, 513. But whether the receiver of a railroad, appointed by a court and operating the road under its direction, is liable to any, and what, extent for injuries to property or person, may be considered as open and undetermined. *Paige* v. *Smith,*

99 Mass. 395; *Meara* v. *Holbrook*, 20 Ohio St. 137; *Kinney* v. *Crocker*, 18 Wis. 74. (See, now, *Cardot* v. *Barney*, 63 N. Y. 281, and *Davenport* v. *Receivers*, 2 Wood, 519, the former of which denies the liability of a receiver for the negligence of his employés, and the latter subordinates any recovery to preëxisting liens.) The receivers in this case were, however, appointed by the governor of the state, under the act of 1852, 151, 5. Code, § 1101. Such a receiver, according to the ruling of our supreme court, is a public agent, and, therefore, not responsible for the misfeasances, malfeasances, or non-feasances of the persons employed by him in the discharge of his official duties. *Erwin* v. *Davenport*, Sup. Ct. Tenn., Nashville, 1872. In this view the state is the principal, and all the employés equally its servants. *Lane* v. *Cotton*, 1 Ld. Raym. 646; *Whitfield* v. *Lord Le Despencer*, Cowp. 754. To make the agent or employé in such case liable, he must be the immediate actor in the wrong, and guilty of direct negligence, omission, or commission. Story on Agency, § 319. The law provides that the rents, issues, and profits of a railroad in the hands of a state receiver, " exclusive of the costs and expenses incident to said proceedings," shall be accounted for by settlements with the comptroller of the state, and " deposited in the treasury of the state." 1852, 151, 5. (Code, §§ 1104, 1105.) It is obvious, therefore, that any person who wishes to reach these funds, while in the hands of the receiver, must be able to show that his claim is within " the costs and expenses " incident to the receivership ; and if he wishes to hold the receiver personally responsible, must show direct misfeasance, or positive wrong, done by him in the necessary discharge of his official functions. *Duncan* v. *Findlater*, 6 Cl. & Fin. 894 ; *Mersey Docks Trustees* v. *Gibbs*, L. R., 1 H. L. 111, and cases there cited.

When we apply these plain principles to the facts set out in the complainant's bill, we do not find that he brings his case within any of the categories which would

entitle him either to reach the funds of the receivership, or the defendants personally. The judgments on which the bill is based are against the railroad company, not the receiver, and, although recovered shortly after the defendant Connel was appointed receiver, it is not averred in the bill, nor shown by proof, that the loss for which the recovery was had occurred during the defendant Connel's term of office. It is clear, therefore, that no case is made out for holding that defendant, nor of course his successor in office, personally responsible. The averment of the bill is that the loss accrued "since said road was placed in the hands of receivers." If the complainant has any cause of action on this statement, it would be, upon some sufficient ground, to reach "the rents, issues, and profits" of the road in the hands of the receivers. But, inasmuch as the state is in possession, by statutory mortgage, under its public agent, in order to reach the end sought it was incumbent on the complainant to aver and show that his claims fall within "the costs and expenses" of the receivership; for otherwise the claim would only be a debt or liability subordinate to the state's lien. This he has not done in his bill, nor by his proof. He does not show how or when the loss occurred; he has simply relied upon his judgments. But these judgments are against the railroad company, and *prima facie* imply that they were for wrongs committed by that company. And, although it may be that there are cases where the company may be liable to the party aggrieved while the road is being run by a receiver, and for the recovery of which the profits of running the road might be equitably reached, the burden is upon the complainant to make out such a case. *Ohio & Mississippi R. R. Co.* v. *Fitch*, 20 Ind. 498; *Louisville, New Albany & Chicago R. R. Co.* v. *Cauble*, 40 Ind. 277. The judgments themselves are not binding on the receivers, nor even evidence against them. They are *res inter alios acta*, and of themselves can create no lien or charge on the funds of the receivership. It was incumbent upon the complainant to

go behind them, and prove that the causes of action on which they are based were valid causes of action against the defendants, or proper charges on the funds which came to their hands. The bills are not drafted with this view, and there is no evidence whatever to sustain the required case. The bills must, therefore, be dismissed with costs.

---

## W. R. BELL, *Ex parte.*

### April Term, 1875.

TESTAMENTARY GUARDIAN CANNOT BE APPOINTED BY A MOTHER.—A mother has no power to appoint a testamentary guardian for her children.

*Neil S. Brown,* for petitioner.