K. P. Rly. Co. v. Wood.

THE KANSAS PACIFIC RLY. CO. v. JAMES WOOD.—THE
KANSAS PACIFIC RLY. CO. v. THEO. WEICHSELBAUM.

1. RAILWAY CORPORATION; *Receiver in Possession of its Property; Stock Law.*
In 1874, the legislature passed a law requiring railroad companies to fence
their roads, or be liable for stock killed by their trains. The defendant
corporation was then in existence. In 1876, its property was passed into
the hands of a receiver, duly appointed. In 1879, the receiver was dis-
charged, and the property returned to the possession of the corporation.
Just before this was done, and while the possession of the receiver con-
tinued, stock belonging to plaintiffs was killed by the railroad trains,
at a place where the road was unfenced, and where it might have been
fenced. *Held,* That an action might be maintained against the corpora-
tion for the enforcement of the liability imposed on it by said statute.

2. FINDINGS *Sustain Judgment.* Where the testimony is not preserved,
and the bill of particulars alleges, and the findings show, in general
terms, that the road was unfenced, and yet could have been fenced at
the place where the stock was killed, and nothing appears as to the con-
dition of fencing at any other place, or as to where the stock went upon
the track, *held,* sufficient in this respect to sustain the judgment against
the corporation.

·3. ——— No attorney-fees can be allowed for defending in this court
a proceeding in error to review a judgment rendered under said law
of 1874.

*Error from Riley District Court.*

Two actions, brought under the stock law of 1874, against
the *Kansas Pacific Railway Company;* one action by *Wood,*
to recover damages for two steers belonging to him, which
had been killed by the defendant's trains, and the other by
*Weichselbaum,* to recover damages for his horse killed thereby.
Trial by the court at the March Term, 1880, when the former
plaintiff recovered a judgment for $110 and costs, and the
latter plaintiff had judgment for $135 and costs. The de-
fendant brings the cases here. The opinion states the facts.

*J. P. Usher,* and *Charles Monroe,* for plaintiff in error.

*Green & Hessin,* for defendants in error.

The opinion of the court was delivered by

. BREWER, J.: These are actions under the law of 1874
against the defendant, now plaintiff in error, for stock killed

by its trains. At the time these injuries were done, the railroad was in possession and under the control of a receiver appointed by the United States court, and the principal question is, can the company be held liable for stock killed upon its road, by its trains, when the management and possession of the road are not in the corporation, but in the hands of an officer of the court? Beyond the possession of the receiver, these further facts appear: that the road was in default for not building a fence, for some years before any receiver was appointed; that shortly after the injuries, the road was restored to the possession of the company; that in the one case the injury took place after the entry of the order of restoration, and in both cases less that thirty days before the actual surrender of possession to the company. Hence, as thirty days' demand is required by the statute, no claim could have been preferred against the receiver during his continuance in office, even if the statute were construed to cast a liability upon him. The argument is, that a statutory duty was cast upon the company, and that for an omission of that duty it is liable, and an action can be sustained against it, whether one will lie against the receiver or not, and whether the property of the company in the hands of the receiver can be reached or not.

Authority upon this question is limited, but what there is goes to sustain the action. In Indiana, the question has been presented four times to the supreme court, with a uniform result. (*O. & M. Rld. Co. v. Fitch*, 20 Ind. 498 ; *McKinney v. O. & M. Rld. Co.*, 22 Ind. 99 ; *L. N. A. &. C. Rld. Co. v. Cauble*, 46 Ind. 277; *I. C. & L. Rld. Co. v. Ray*, 51 Ind. 269.) High, in his treatise on Receivers, after stating the general doctrine that the corporation is not liable for the negligence of the employés of the receiver in operating the road, adds:

"Where, however, an absolute liability is fixed upon a railway company by statute, a different principle prevails. Thus, if the company is made by statute absolutely liable for the killing of stock in cases where its road is not securely fenced, the fact that the affairs of the company have passed into the hands of a receiver, appointed by the federal court,

constitutes no defense to an action on such liability against the railway company in the state court, and the plaintiff may recover judgment in such action, upon the statutory liability, notwithstanding the possession of the receiver. In such cases it is held that the corporate body still exists, and since the law renders it liable, the receiver operates the road subject to such liability." (Sec. 397.)

This statement of the law is founded upon the cases from Indiana, and is to be taken as the concurrence of the author with those views. In the case in 22 Ind., the court thus expresses its views:

"The statute makes railroad companies liable for stock killed by the cars, etc., of the company, without reference to the question of negligence, the road not being securely fenced. This statute contains no exception in favor of companies whose roads may be operated·by a receiver, instead of the servants of the company. It is in the nature of a police regulation, designed to promote the security of persons and property passing upon the road. The reason and spirit of the law are as applicable to roads operated by a receiver as to those operated by the servants of the company."

We premise what we may have to say, with the remark that it makes no difference with the question, that the court appointing the receiver was a court of the United States. It involves no question of conflict of authority. There is no attempt to interfere with the possession of the receiver, or to render him amenable to any court other than the one appointing him. It involves no claim even upon the property of the corporation which has been placed in his hands. The question rather is, whether the appointment of a receiver by any court of competent jurisdiction operates to release the corporation from the statutory liability cast upon it?

Counsel for the company very strongly challenge the authority of these decisions, upon two grounds: one, a difference between the statutes of Indiana and Kansas; and the other, the soundness of the principles upon which they are rested. There is, as will be seen at a glance, a marked difference between the two statutes, and this difference is one which simplifies the argument required to support those decisions. We place the two statutes, or so much as is material, side by side:

KANSAS STATUTE.

An Act entitled "An act relating to kill-ing or wounding stock by railroads."

*Be it enacted by the Legislature of the State of Kansas :*

Section 1. Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each any [and] every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not.

Sec. 2. In case such railway company or corporation, or the assignee or lessee thereof, shall fail for thirty days after demand made therefor by the owner of such animal, or his agent or attorney, to pay such owner, or his agent or attorney, the full value of such animal if killed or damages thereto if wounded, such owner may sue and recover from such railway company or corporation, or the assignee or lessee thereof, the full value of such animal or damages thereto, together with a reasonable attorney's fee for the prosecution of the suit, and all costs in any court of competent jurisdiction in the county in which such animal was killed or wounded.

Sec. 3. The demand mentioned in section two of this act may be made of any ticket agent or station agent of such railway company or corporation, or the assignee or lessee thereof.

Sec. 4. In all actions prosecuted under this act, it shall be the duty of the court, if tried by the court, or jury if tried by a jury, if the judgment or verdict be for the plaintiff, to find in addition to their general findings for plaintiff the amount, if anything, allowed for an attorney's fee in the case.

Sec. 5. This act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence, to prevent such animal from being on such road.

EXTRACT FROM INDIANA STATUTE.

An Act to provide compensation to the owners of animals killed or injured by the cars, locomotives, or other carriages of any railroad company in this state; and to enforce the collection of judgments rendered on account of the same; and to repeal all laws inconsistent therewith.

Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That lessees, assignees, receivers, and other persons running or controlling any railroad, in the corporate name of such company, shall be liable jointly or severally with such company for stock killed or injured by the locomotives, cars, or other carriages of such company, to the extent and according to the provisions of this act.

Sec. 2. That whenever any animal or animals shall be, or shall have been killed or injured by the locomotives, cars, or other carriages used on any railroad in, or running through this state, whether the same may be or may have been run and controlled by the company, or by the lessee, assignee, receiver or other person, the owner thereof may go before some justice of the peace of the county in which such killing and injuring occurred, and file his complaint in writing, and such justice shall fix a day to hear said complaint, and shall cause at least ten days' notice to be served on the railroad company, by the service of a summons, by copy, on any conductor of any train passing into or through said county.

Sec. 4. The action may in all cases contemplated by this act, be brought against the railroad as defendant, whether the same is or was being run by the company, or by a lessee, assignee, receiver, or other person in the name of such company.

Sec. 7. This act shall not apply to any railroad securely fenced in, and such fence properly maintained by such company, lessee, assignee, receiver, or other person running the same.

The Indiana statute names receivers, and, in terms, makes them liable. Ours does not. That authorizes an action against the railroad, whether it is operated by the company or a receiver. Ours contains no such provision. That gives a cause of action for stock killed by locomotives, cars, etc., used on the railroad, whether run and controlled by the company, or a receiver. Ours, in terms, does not extend so far.

Is this difference vital? Our statute names assignees and lessees, but not receivers. *Expressio unius, exclusio alterius.* Was there any intent to bring receivers within the statute? If this were a claim against a receiver, this might be a pertinent question. The omission may show that the legislature did not intend to cast any liability on a receiver; but does it not also tend at least to show that it did not intend that the appointment of a receiver should affect the liability of the corporation? Naming lessees, is it not fair to say that it was intended that a lease should relieve the corporation and cast the burden on the lessee? Omitting receivers, is it not equally fair to hold that the intention was to leave the liability on the corporation, unaffected by the appointment of a receiver? Neither statute in terms requires that the train doing the damage shall be owned and operated by the company. The Indiana statute expressly provides for liability of the company, even when the road is run and controlled by a receiver. Ours simply in general terms casts a liability for cattle killed or wounded "by the engine or cars on such railway." And that this does not require that such engine and cars be owned or operated by the company, was decided in the case of *K. C. Ft. S. & G. Rld. Co. v. Ewing,* 23 Kas. 273. In brief, the difference between the two statutes is this: while both ignore the matter of negligence in the management of the train, and cast an absolute liability for default of a fence, ours stops with casting this liability, while the Indiana statute in terms provides that the fact of a receiver and his possession shall not limit or restrict the company's liability. Of course, then, in that state, the only question was as to the power to so legislate; here, the further question

arises, whether the silence of the statute permits the courts to engraft an exception in case of a receiver upon the otherwise absolute liability.

Upon the question of power, we think the ruling of the Indiana court was correct. The right to incorporate, to condemn lands and operate a railroad, is a franchise, a grant from the state, and the conditions upon which that grant may be taken and held are within the legislative discretion. No one is compelled to accept such a franchise, and no one may complain of the conditions upon which alone it may be taken and held. If the legislature sees fit to provide that the franchise of building and operating a railroad shall be held only upon condition that the road be fenced, it can be held and exercised only upon that condition; if, that the corporation shall be liable for all stock killed by trains on that road so long as it is unfenced, then only with that liability. No act of the corporation can absolve itself from any condition upon which its franchise is held. It may alienate its property, but the corporation still existing is responsible for any default as to these conditions. And under the limitations of our constitution, the imposition of a new police regulation is equivalent to an original condition of the franchise. See, also, *O. & M. Rld. Co. v. Dunbar*, 20 Ill. 626; *Illinois, &c., Rld. Co. v. Finnigan*, 21 Ill. 646; *Rockford, &c., Rld. Co. v. Heflin*, 65 Ill. 367; *Bay City, &c., Rld. Co. v. Austin*, 21 Mich. 390.

Upon the other question, as the statute has made no exception on account of a receiver, the courts are not warranted in making one. This is not a case in which a party is relieved from a statutory duty because a superior duty or force prevents compliance. It may be true, as counsel urge, that after full possession has been transferred to the receiver, the company may not enter to build the fence, and that the court appointing the receiver would punish for contempt any such interference with his possession. If the statute had been enacted after the appointment of a receiver, it may well be that this argument would be conclusive. But here the statute was in force years before the appointment of any re-

ceiver. The company failed to comply with its behests. It accepted the alternative, i. e., liability for all stock killed by trains run upon its road. This liability arises, not from any negligence in the running of the trains, any misconduct of the receiver or his employés. If it did, it might well be argued that his should be the responsibility. The default is that of the company. It did not complete its road as the statute contemplated that it should be completed. It is not the theory of the law, that the receiver succeeds to the company in all its powers and duties of construction and completion of the road. He simply preserves the property pending the litigation for its future owners. He takes the road as he finds it, and unless specially ordered otherwise by the court appointing him, he discharges his full duty, and is guilty of no omission, no misconduct, if he turn it over at the close of his trust in as good condition as he received it. So that it cannot be said that the want of a fence is his default. Whether the property of the corporation in his hands can be charged with injuries resulting from the default of the company prior to his appointment, we need not stop to inquire. By the record, the only one in default was the company, and it alone is sought to be charged with the responsibility. The statute imposing a liability upon assignees and lessees contemplates that an assignment or lease will relieve the corporation. Does it not follow that the legislature intended that nothing else should? And if so, the courts should add no other, certainly not in any case in which the corporation had both the power and the opportunity to comply with the requisitions of the statute.

A distinction may be drawn between those statutory duties which require constant action on the part of those operating the road, such as ringing the bell at every crossing, and those which, like the one in question, are of the nature of permanent improvements. If the company has complied with the former while it was running and operating the road, an omission during the possession of the receiver may not be the

40—24 KAS.

default of the company. But an omission of the latter, when the company had the power and opportunity to obey, is its default, and one for which it remains liable so long as its chartered relations continue to the road. Of course, it may claim exemption from every duty when, by final sale, it has lost all relations to the property.

The principal question must, under the circumstances of this case, be answered in the affirmative.

One other proposition is advanced by counsel for the company. It is contended that it should affirmatively appear that the place at which the stock went upon the track, was without a fence, and could rightfully be fenced. The bills of particulars charge and the findings show that at the place where the stock was injured, the road was not fenced, and yet that it could have been. This is sufficient. Whatever questions might arise, if it appeared that the stock went upon the track at a place where the company could not fence, such as a public crossing, and wandered along to a place where there was a proper fence, and there received the injury, are immaterial here. The statute applies where the road is not inclosed with "a good and lawful fence to prevent such animals from *being* on such road." And when all that is before us is the general allegation in the bills of particulars and general statement in the findings that the cattle were injured at a place where the road was not fenced and where it could be fenced, it must be held that a sufficient showing appears to render the company liable. (*Bellefontaine Rld. Co. v. Reed*, 33 Ind. 477; *Ohio, &c., Rld. Co. v. Miller*, 46 Ind., 215; *I. & C. Rld. Co. v. Adkins*, 23 Ind. 340.)

On a motion so filed therefor, defendant in error asks us to tax against the railroad company an additional amount, as fees of counsel in this court. This motion will be overruled. The statute gives no attorney's fee for defending actions, and no new judgment is recovered in this court.

The judgment will be affirmed.

All the Justices concurring.