JOHN RYAN v. R. S. HAYS, RECEIVER.

(Case No. 5061.)

I. & G. N. R'Y CO. v. JOHN RYAN.

(Case No. 5249.)

1. RAILWAY COMPANY — LIABILITY OF RECEIVER — DAMAGES. — A receiver was appointed in April, 1878, by a court of competent jurisdiction, on the application of bond-holding creditors of a railway company, and was invested with exclusive authority to manage and carry on the business of the road, as a common carrier, subject to the supervision of the court, and for that purpose he was invested by its order with all the rights and franchises of the corporation. The property was afterwards sold, October 13, 1879, and purchased by the bondholders, for whose benefit the receiver had been appointed, and the sale had been ordered. The sale being approved by the court, a deed was executed to the purchasers. The purchasers thereupon conveyed the property to the original railway company for a less sum than the amount bid by them, taking a mortgage to secure payment. After the reconveyance to the original company, its board of directors passed a resolution accepting from the receiver the property and all money in his hands,

and assuming all debts and liabilities against him as receiver, and providing for executing to him an indemnifying bond. The receiver was finally discharged from his trust in December, 1879. On the 15th of October, 1879, suit was brought against the receiver, and against the railway company, to recover damages for injuries inflicted on plaintiff through the negligence of its servants, at a time when the road was under the exclusive management and control of the receiver, but it was not claimed that he was responsible otherwise than officially, as receiver. *Held:*

(1) The receiver was not liable to plaintiff after all the property, once in his control as receiver, had been turned over to the purchasers, and after he had received his discharge from the court.

(2) With the discharge of such receiver from his trust, and the surrender of all property in his hands as receiver, his liability, being an official one, ceased, except in cases where he was personally, at fault.

(3) It is technically true that the relation of master and servant does not exist between a railway company and a receiver, when the company's property is placed in his possession by a proper court, and he is required by its order to discharge with the property of the company the duty of a common carrier. Citing cases, for which see opinion.

(4) While this is true, the profits or income of the property, while in the hands of the receiver, are responsible for the satisfaction of claims for injuries resulting from the negligence of the receiver or of his employees.

(5) The question whether, when a receiver is appointed on the application of mortgage creditors, they can be required to yield from the proceeds of the sale of the mortgaged property a sum sufficient to pay for freight lost, or for damages or injuries done passengers through the negligence of the receiver or his employees, not considered.

(6) If the company was not responsible for damages sustained by plaintiff, through the negligence of the servants of the receiver, further than its current receipts while in his hands, it follows that the company would incur no obligation to pay such damages, from the mere fact that they purchased the property from those who bought it at the receiver's sale.

(7) A valid claim for damages against the receiver was entitled to satisfaction out of the current receipts applied to satisfy mortgage creditors, or to the improvement of the railway property; and the court appointing the receiver would have had authority to apply such portion of the proceeds of the mortgage sale as would equal such applied current receipts or the value of such improvements, to satisfy such claim for damages.

(8) The resolution of the directors, providing for an indemnifying bond to the receiver, inured to the benefit of any one contemplated by it, having a just debt or claim against the receiver as such, or personally.

(9) A claim for damages caused by injuries inflicted by the servants of a receiver, while he is operating a railroad, is entitled to payment out of the current receipts of the road; and if they are invested in betterments of the road, then such claim is entitled to satisfaction out of proceeds of sale of the road to satisfy a mortgage, to the extent of the value of such betterments.

2. VERDICT.— See opinion for a verdict held to be neither a general nor a special verdict, and not sufficient to authorize a judgment in this case.

APPEAL from Anderson. Tried below before the Hon. Peyton F. Edwards.

The case is stated in the opinion.

*Baker & Botts*, for the company, in support of their proposition that the company was not liable for injuries sustained while the properties of the road were in the hands of the receiver, cited: High on Receivers, secs. 390, 395, 396, 398; Pierce on R'ys (ed. of 1881), p. 285; Jones on Cor. Securities, secs. 513–516; Wood on Master and Serv., sec. 789; Ohio & M. R. R. Co. v. Davis, 23 Ind., 553; Bell v. I. C. & L. R. R. Co., 53 id., 57; Murphy v. Holbrook, 20 Ohio St., 137; Cardot v. Barney, 63 N. Y., 281; Camp v. Barney, 4 Hun (N. Y.), 373.

*Gammage & Gregg*, for Ryan, cited: Louisville, New Albany, etc., R. R. v. Cauble, 46 Ind. (6th American R'y Rep.), 349; Washington, etc., R. R. Co. v. Brown, 17 Wall., 450, 451; Ohio & Miss. R'y Co. v. Fitch, 20 Ind., 498; Henderson v. Railway Co., 17 Tex., 573; Echols v. Dodd, 20 Tex., 195; Phil. & R. R'y v. Derby, 14 How., 468; Story on Agency, secs. 127, 135, 137, 452; Ang. & Ames on Cor., secs. 292, 315; Smith on Master and Servant, 152.

On the verdict being sufficient, they cited: Baker v. Wofford, 9 Tex., 516; State v. Dyches, 28 Tex., 535; R. S., 1421, p. 219; Blumenthall v. Brainard, 38 Vt., 402; N. & T. Plankroad v. Griffin, 57 Penn., 417; King v. Emory, 3 Term Rep., 515; King v. Passamore, 3 Term Rep., 190; Meara v. Hancock, 20 Ohio, 137; Jordan v. Wells, 3 Woods' Rep., 527; Kline v. Jewett, 11 C. E. Green, 474; Newell v. Smith, 49 Vt., 255; Page v. Smith, 99 Mass., 395; Kinney v. Crocker, 18 Wis., 74; 42 Iowa, 683; 80 N. Y., 485; 45 N. Y., 327; 45 N. Y., 45; 27 Iowa, 99; 34 Iowa, 71; 21 Conn., 117.

The other citations in their brief referred to questions of law involved, arising on the facts in the event the company would have been liable for damages.

STAYTON, ASSOCIATE JUSTICE.—These causes being consolidated will be considered together.

One action was brought by Ryan against the International & Great Northern Railroad Company, and against R. S. Hays, as receiver, appointed by the United States circuit court for this circuit.

The action was brought to recover damages for personal injuries alleged to have been received by Ryan while a passenger on a train belonging to the railway company.

Ryan alleged that he received the injury at a time when the railway was in the exclusive management and control of Hays as receiver, as was the other property of the railway company.

Hays was appointed receiver in certain causes pending in the

United States circuit court, wherein bondholders were seeking to foreclose mortgages given by the railroad company on its franchises, roads and other property; and the railroad company was enjoined from interfering with the property placed in the hands of the receiver, or with his management.

This action was instituted on the 15th of October, 1879, for an injury alleged to have been received on June 18th in the same year. The property in the hands of the receiver, including the railway franchise, railway, engines, cars, and appurtenances, were, under an order of the circuit court, sold by the receiver, which order was made in one of the suits pending against the railroad company. This sale took place in July, 1879, and another like sale was made in pursuance of proceedings had in another case; this sale was made October 13, 1879.

The property was purchased by the bondholders for whose benefit the sales were ordered; the sales were properly reported to the circuit court, and were by it in all things approved, and a deed was directed to be made to the purchasers, which was executed.

On November 1, 1879, the purchasers at the sales before referred to reconveyed to the railroad company (the original corporation) all the property and rights purchased by them, at a price much less than the amount for which it was bought, to secure which a mortgage was given.

From November 1, 1879, the railway, with its franchise and all other property, has belonged to the original corporation.

The order appointing Hays receiver, among other things, "authorized and instructed him to carry on the business of a common carrier through the whole extent of this defendant's line of railway, according to the usual course of business, under and subject to the supervision of said circuit court, and to use and employ defendant's property to that end, and in doing so he shall be vested with all of the defendant's rights and franchises as a corporation."

On the 17th of November, 1879, the stockholders of the railway company passed the following resolution:

"*Resolved*, That the board of directors be authorized to accept from the receiver of the property of the company, Mr. R. S. Hays, all money and other property remaining in his hands on the 1st day of November, 1879, and to assume in the name of this company all debts and liabilities of said receiver existing on that day; and further, to execute and deliver to the receiver, in the name of the company, a bond of indemnity against all liabilities incurred by him as such receiver."

The bond was given in pursuance of the resolution, but it was

not offered in evidence, and it does not appear that it was or was not strictly in accordance with the resolution. In the absence of proof to the contrary, it will be presumed that the directory executed the bonds in accordance with the direction of the stockholders contained in the resolution.

About the last of December, 1879, the receiver passed his account final, and was discharged from his trust; he, however, turned over the property which was in his hands to the railway company prior to that time.

It appears that, during his receivership, Hays received and expended the earnings of the road, under the order of the court that appointed him; that he erected an office, built machine shops, and bought considerable machinery, and that, so far as money earned by the road was applied to its betterment, the same was acquired by the corporation in the repurchase.

What sum from the earnings of the road was invested in improving the same does not appear.

The receiver was appointed upon the petition of the mortgage bondholders, about the 1st April, 1878.

The cause was tried before a jury, which returned a verdict as follows:

"We, the jury, find at the time of the accident, that R. S. Hays was receiver of the International Railroad, and since the 1st day of November, 1879, it has been in possession of the International & Great Northern Railroad Company. We find for the plaintiff, John Ryan, the sum of $2,200."

On this verdict the court rendered judgment against the corporation, after reciting many facts not found by the verdict, but fully proved during the trial.

The railroad company appealed, and the plaintiff prosecutes a writ of error against the receiver, and, at request of both parties, the two cases are consolidated.

It does not appear that the action was brought against the receiver with the consent of the court that appointed him, nor that any steps whatever were taken to have any part of the fund, in his hands, retained under the control of that court to satisfy any claim which the plaintiff might establish in this suit, nor does it appear that any opposition was made to his discharge before the adjustment of the plaintiff's claim should be made.

It is not pretended that any facts existed which would have rendered the receiver responsible, otherwise than officially, for the injuries alleged to have been received by the plaintiff.

Under such a state of facts, we do not perceive that the receiver

would be responsible to the plaintiff after all the property had been turned over to the purchasers and the receiver discharged by the court that appointed him.

The sole liability of a receiver, except in cases in which he is personally at fault, is official; and when his official character ceases, and the property, through which alone his official liability may be discharged, has passed from his hands, in pursuance of the orders of the court that appointed him, and he has been by that court discharged from his trust, then no judgment can be rendered against him; for with the termination of his official existence ends his official liability.

There is no question but that the railway was in the exclusive control and management of the receiver at the time the plaintiff was injured, and it remains to consider whether the relationship of the receiver to the railway company was such as to render it liable for an injury resulting from the negligence of his servants; or whether, under the resolution of the stockholders of the company, and the other facts which may have existed, any liability on the part of the company exists.

The relationship of a receiver to a railway company, of whose property he is put in possession by order of a court of competent jurisdiction, is not in all respects clear, and especially so when, by the order appointing a receiver, he is directed, with the property of the company, to discharge, as was the duty of the railway company, to the public the duties of a common carrier.

It has been held in many cases that the relation of master and servant does not exist in such case between a railway company and the receiver, and that when the receiver has the exclusive control of the operation of a railway placed in his hands, the company to which it belongs is not liable for injuries resulting from the negligence of the receiver or his employees. Ohio & M. R. R. Co. v. Dairs, 23 Ind., 554; Bell v. I. C. & L. R. R. Co., 53 Ind., 57; Metz v. B., C. & P. R. R. Co., 58 N. Y., 64; Pierce on Railroads, 285; High on Receivers, 396; Rogers v. Mobile & Ohio R. R. Co., 12 Am. & Eng. Railroad Cases, 442.

That this is technically true cannot be controverted; but the fact remains that the company is indirectly, through the liability of its property or the profits or income thereof while in the hands of a receiver, made responsible for the satisfaction of claims for injuries resulting from the negligence of a receiver or his employees, and it is exceedingly difficult to see upon what ground this can be accomplished in ordinary receiverships if we entirely exclude the idea that

the receiver is in some sense the servant of the company whose property he holds and operates and whose franchise he exercises.

It may be true, when a railway company, charged by law with a public duty voluntarily assumed through the agencies which the act creating it permits it to select, fails to perform that duty and to comply with its obligations to others, that such person as a court of competent jurisdiction may appoint to take charge of its property, and therewith discharge its obligations to the public and to others at the same time, should be considered its servant in some cases.

The law, ordinarily, through its charter, provides for the management of a railway by a directory, to be selected by the stockholders; but it might provide for the doing of this in some other way, as by the appointment of the directory, in whole or in part, by a named department of the government. If so provided, and such a charter was voluntarily accepted and acted on, would not the directory so appointed be essentially the servants of the railway company, and employees under them also the servants of the company?

In such case might not the stockholders, if they operated under a charter so providing, be held to consent to receive, as their servants, the persons so selected, and might not their acts bind them as fully as though they were selected in the usual manner? If so, does not every railway company accept its charter with the knowledge that, in a given condition of business mismanagement, the control of its business and property, charged with a duty to the public, will be taken from the hands of its directory elected by its stockholders, and placed in the hands of a receiver appointed by a court? In such case would not a corporation, by accepting its charter with a knowledge of the law, consent in effect to such appointment, and the receiver, in an essential sense, thereby become the servant of the company?

In many cases it has been held that a railway company is liable for a breach of duty imposed by statute, even though the injury which is made the basis of the claim occurred at a time when the railway was in the exclusive management and control of a receiver, and this even when due care on the part of the receiver would have avoided the injury. The line of distinction is exceedingly shadowy which gives an action against a railway company for the negligence of a receiver operating its railway, by reason of the fact that the duty, the non-performance of which constitutes negligence, is imposed by statute, which is but a written law. The class of cases referred to, in effect declaring what constitutes negligence, when,

under identically the same facts, the same relief is denied under the unwritten law, which as fully imposes the duty and liability. Kansas & P. R. R. Co. v. Wood, 24 Kan., 619; O. & M. R. Co. v. Fitch, 20 Ind., 498; McKinney v. O. M. R., 22 Ind., 99; 46 Ind., 277; 51 Ind., 269.

In the present state of the law, we decline to lay down a rule so broad as is suggested above, and deem it more consistent with proper judicial action to follow the rules fixed by an almost unbroken line of decisions, made by courts eminent for their learning, by which the ordinary rules for the determination, whether the relation of master and servant exists, have been applied, in cases in which receivers had been appointed with powers to operate and even to build railways. Moreover, there are some difficulties, technical to some extent though they be, which induce us to follow, unless the legislature shall by statute otherwise provide, the rule which the great weight of adjudicated cases seems to establish, which is, that neither a receiver nor his employees are ordinarily the servants of a railway company operated by such person appointed by a court. There are, however, cases in which the rule cannot be applied.

Does the resolution of the stockholders, taken in connection with the other facts shown by the record, show a liability of the company to the plaintiff?

We do not desire to consider the question whether, when persons holding claims against railway companies, secured by mortgage, take the property out of the hands of the owner, who is bound to the public to operate it, and place it in the hands of a receiver, through an order of court giving to him full power to operate it as the owner was bound to do, can be called upon to yield from the proceeds of the sale of the mortgaged property, if necessary, a sum sufficient to discharge all current charges while so operated, including such sums as may be necessary to pay for freight lost or damaged or injuries done to passengers through the negligence of a receiver or his employees. This question is not directly involved in this case.

There is high authority to the effect that, for such purposes, the mortgagors cannot ordinarily be compelled to relinquish any part of the proceeds of the mortgaged property. Davenport v. The Receivers, 2 Woods, 520; Fosdick v. Schall, 99 U. S., 235; Huidekoper v. Locomotive Works, 99 U. S., 258.

It has been held that the earnings of a railway company, while its road was in the hands of and operated exclusively by a receiver, were chargeable with the value of goods lost in transportation while the road was so operated. Cowdrey v. G. N. & H. R. R. Co.,

93 U. S., 352; Kain *v.* Smith, 80 N. Y., 470; Klein *v.* Jewett, 26 N. J. Eq., 481.

The same principle has been declared applicable where the claim is for injuries to the person of a passenger while the road was so operated. Barton *v.* Barbour, 104 U. S., 133; 80 N. Y., 470; 26 N. J. Eq., 481; *Ex parte* Brown and wife *et al.*, 9 Am. & Eng. R. R. Cases, 730.

It has been further held, if current receipts be applied to the mortgage debt, or to the improvement of the mortgaged property while in the hands of a receiver, to the prejudice of current creditors, that the court controlling the property may take from the income of the receivership, or even from the proceeds of the sale of the mortgaged property, a sum sufficient to discharge current obligations, which, but for the diversion of the funds, would have been paid in the ordinary course of business. Fosdick *v.* Schall, 99 U. S., 253; Addison *et al. v.* Lewis *et al.*, 9 Am. & Eng. R. R. Cases, 702; 75 Va., 701.

If the railway company would not have been responsible for the damage sustained by Ryan through the negligence of the servants of the receiver at the time the injury was received, further than that the current receipts from the use of the road while in the hands of the receiver might have been used to discharge an obligation thus accruing, it must be held that the same company would not incur any personal obligation whatever, simply by purchasing the property from the purchasers at the receiver's sale.

Any fund which might be in the hands of the receiver would be subject to such appropriation as the court having control of the receivership, under the rules applicable to such matters, might make, in the adjustment of equities between the two classes of funds which the receiver may at any time have had, and between the persons having claims upon the respective funds.

If the railway company be liable to Ryan, it must be through some contract made by it with the receiver or with himself, whereby it assumed an obligation other than that imposed on it by law.

It does not appear whether the amount bid for the property by the mortgage bondholders was ever actually paid to the receiver, and it may be true, that, in fact, it never was; for a credit upon their claims as between them and the railway company would have answered all purposes of payment.

This, however, would not be sufficient as between the court and its receiver, having in view the right and power of the court to take from the proceeds of sale such sum as might be necessary to reim-

burse the current receipt fund, for the benefit of those having claims on it.

It would have been the right of the receiver, unless otherwise directed by the court, to hold the property sold until it was fully paid for, if the proceeds of the sale under the facts existing, or any part of it, could have been applied by the court to any other purpose than the satisfaction of the mortgage debts.

As between the railway company and the receiver, the former could, by contract, assume the payment of any claim outstanding against the receiver, or against such funds as would have been in his hands, if the different classes of funds had been at all times appropriated to such claims only as were primarily charges upon them, and this, as a condition on which the receiver would surrender to it the property and funds in his hands, liable to the satisfaction of any claim there might be against him as receiver.

If Ryan had a valid claim against the receiver, which ought to have been paid out of the current receipts of the railway while in the hands of the receiver, then, if such current receipts were diverted from the use to which they were primarily applicable, and were applied to the payment of the mortgage debts, or to the improvement of the mortgaged property and the purchase of machinery which became a part of it, then the court appointing the receiver would have been authorized to apply such portion of the proceeds of the sale of the mortgaged property to the payment of the debts incurred by the receiver during his management, as might be necessary, to the extent of the current receipt funds applied to the payment of the mortgage debts, or the betterment of the mortgaged property. Fosdick v. Schall, 99 U. S., 252.

Sound principle may require the ultimate holding, in reference to receivership through which extensive lines of railway are operated and even built, that mortgagees holding mortgages which give them the power to enter and operate a railway in default of the payment of the mortgage debt, who, instead of protecting themselves through the power thus given, and assuming the liabilities which ordinarily attach to common carriers, apply to the courts for protection, through receiverships, shall have such protection only upon terms that the entire proceeds of sale as well as the income of the property shall be subject to the payment of all current expenses, including loss or damage to freight or injury to passengers.

The record in this case manifests that the earnings of the road, while in the hands of the receiver, to some extent, had been applied to the betterment of the mortgaged property; that the accounts of

the receiver had not been settled; that the mortgaged property had been sold; but it does not show that the purchase money therefor had been paid, or in any manner brought within the actual control of the receiver or of the court that appointed him. This action was pending, and to it the receiver was a party. Before surrendering his trust it was proper that he should have in some way secured the payment of such debts as existed against the receivership; to have accomplished this purpose, the circuit court might have required the purchase money, so far as necessary for that purpose, to be paid into court to await subsequent disposition, or, in default of the payment of the purchase money, might have held the property sold, still subject to its jurisdiction and sale for the satisfaction of all such claims as might be established against it. Farmers' L. & T. Co. v. C. R. R. Co., 2 McC., 181.

The railway evidently desired to get full possession of the property; the receiver not having been discharged from his trust by the court which appointed him, desired in some way to be protected against debts or claims properly chargeable against the receivership. He evidently conceived that this could be done by the company assuming such debts as the money or property in his hands as receiver was liable for; and, therefore, for the purpose of carrying out the intention and desire of both parties, the resolution of November 17, 1879, was passed. We must presume, in the absence of proof to the contrary, that the bond was executed in accordance with the resolution; but whether so or not, if the purposes of the resolution were carried out, then the company is as fully bound as though the bond had been executed. That Ryan or any other person, whose claim or debt was contemplated by the resolution, may have the contract evidenced by the resolution inure to his benefit we have no doubt.

The resolution evidently was intended to apply to all liabilities of Hays, whether incurred personally or as receiver. Such is the only legitimate construction to be placed on the language used in it.

We are therefore of the opinion, if Ryan had a claim which the United States circuit court would or ought to have directed to be paid out of any money or property which came into the hands of the receiver, that then the railway company is, by virtue of the contract with the receiver, liable to pay such debt.

That a claim for injuries received by Ryan while the road was operated by the receiver, if properly established, was entitled to payment out of the current receipts of the road, we have no doubt; and if the current receipts were used for the betterment of the

mortgaged property, then Ryan would have been entitled to payment out of the proceeds of sale of the mortgaged property to the extent, so far as necessary, that the current expense fund was diverted.

If, however, the property or money which may have been in the hands of the receiver, by reason of any fact, would not have been liable to the payment of Ryan's claim, then he has no cause of action against the railway company, it not being pretended that he had any claim which he could have asserted against Hays, otherwise than as receiver; for the resolution only enables him to assert against the company such a claim as he might have enforced against property or money which the receiver may have had in his hands, and not properly disposed of.

The extent of such property or money, if any, is not shown by the record.

What has been said disposes of the first and second assignments of error.

The court did not err in refusing to give the instruction referred to in the third assignment; so far as not objectionable it was given in the main charge.

We are also of the opinion that the facts did not justify a charge submitting to the jury whether Ryan was a servant of the receiver.

A portion of the charge, referred to in the fifth assignment, might have been given, but it was so connected with objectionable matter as to be erroneous as an entirety, and the court correctly refused to give it.

The verdict is neither a special verdict nor a general one, and we are of the opinion was not sufficient to authorize the judgment rendered.

There is no assignment calling in question the sufficiency of the evidence as to the manner in which Ryan received the injury of which he complains, to sustain a verdict in his favor, and that matter cannot be considered.

For the reason that the cause seems to have been tried upon the theory that the resolution of the stockholders, and the bond given under it, created a liability on the part of the railway to pay such judgment as Ryan might obtain, without reference to whether there was any fund in the hands of the receiver which in an action against him might have been subjected to the payment of Ryan's claim, and for the insufficiency of the verdict, the judgment is reversed and the cause remanded.

Reversed and remanded.