NAT HOLMAN v. GALVESTON, HARRISBURG & SAN ANTONIO
RAILWAY CO. ET AL.

Delivered October 28, 1896.

**1. Receiver of Railroad—Liability of Company for Damages During Receivership.**

In the absence of proof that the receiver of a railroad derived funds from its operation which were turned over to the railroad company or purchaser of the road, or invested in betterments, damages to freight shipped under a contract with the receiver after judicial sale of the road, but before delivery to the purchaser, can not be recovered of the company or the purchaser.

**2. Practice on Appeal—Exclusion of Evidence—Waiver.**

Where a special demurrer has been sustained to that part of the petition setting up a certain item of damage, and the petition has not been amended, nor error assigned to such ruling, the action of the court in rejecting evidence as to that item will not be considered.

APPEAL from the County Court of Fayette. Tried below before Hon. W. S. ROBSON.

*R. H. Phelps,* for appellant.

*Brown, Lane & Jackson,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellant against the Galveston, Harrisburg & San Antonio Railway Co. and the Houston & Texas Central Railway Company to recover $662 damages to cattle shipped by him over their roads on April 6, 1893. It was alleged that the roads were partners and jointly interested in the shipment. It was alleged that the agent of the first named road would not receive and ship the cattle when tendered to be carried first over its line and then over the Missouri, Kansas & Texas Railway Company's road to East St. Louis, Ill., but compelled appellant to ship them over the Houston & Texas Central Railway Company's railway, which was a circuitous route, whereby plaintiff was damaged in the sum of $100. The

other items of damages are alleged to have accrued after the cattle were delivered to the other appellee and to have been occasioned by its negligence. A special exception was interposed by the Galveston, Harrisburg & San Antonio Railway Co. to said $100 item of damages, and was sustained.

A general denial, and a denial of partnership under oath, was plead by both parties.

The Houston & Texas Central Railway Co. plead specially that Chas. Dillingham was at the date of shipment receiver of its road, and received appellant's cattle on the day alleged under a through contract of affreightment to East St. Louis, which limited the receiver's liability to such damages as might accrue in transporting the cattle over its road, etc.,—the matters regarding the receivership, set out in conclusions of fact, being fully pleaded. Nothing was plead by appellant in avoidance of this special plea. The jury, under instruction of the court, returned a verdict for defendants.

The following facts were established without contradiction. On May 2, 1886, Chas. Dillingham and two other persons were by the Circuit Court of the United States for the Eastern District of Texas, appointed joint receivers of the railroads and property of every character of the Houston & Texas Central Railway Co., and were by an order of said court directed and empowered to take possession, manage, control and operate all of said property; the receivers qualified under said appointment and took possession of said roads, etc., and managed and controlled the same until the date hereinafter mentioned.

On May 4, 1888, said circuit court rendered a final judgment in the case wherein said order was made, foreclosing certain mortgages upon all the property, rights, franchises and assets of said railway company. By this judgment, Chas. Dillingham was appointed special master commissioner for the purpose of selling all of said property under the terms specified in the decree, which provided that the purchaser of said railroads and franchises thereunder should be invested with and hold, possess and enjoy the same, and all the privileges, immunities and franchises, as fully and completely as the said Houston & Texas Central Railway Co., subject only to the right which the court reserved in said decree to charge on any part of the property so sold and amount which should be determined by the court to be due and payable by reason of intervening petitions filed in said cause under the further orders of said court.

In accordance and in compliance with the terms of said decree, Chas. Dillingham, as special master commissioner, on September 8, 1888, sold all of said property, railroads, franchises, etc., of said railway company to one Frederick P. Olcott, and made report of the sale to said court, which report was, on September 26, 1888, in all things confirmed.

On December 7, 1888, the other two joint receivers were discharged, and Chas. Dillingham was continued by an order of the court as the

sole receiver until April 10, 1893.    Until which time, as such receiver, he possessed, controlled and managed all of the aforesaid property.

On January 18, 1889, Chas. Dillingham, as special master commissioner, made and executed to said Olcott deeds conveying all and singular the railroads, properties, franchises, etc., of said railway company bid in and purchased by him at said sale, which includes all railroads and other property now owned by said company.

On August 1, 1889, the Houston & Texas Central Railroad Co., a private corporation, was formed under the laws of the State of Texas by Frederick P. Olcott, the purchaser of said railroad property, and his associates.

On April 1, 1890, the said Frederick P. Olcott sold the said railroad property, rights and franchises, purchased by him as aforesaid, to the Houston & Texas Central Railroad Company.

On December 9, 1892, the Hon. L. Q. C. Lamar, Associate Justice of the Supreme Court of the United States, assigned to the Fifth Judicial Circuit, made an order directing that Chas. Dillingham, receiver of the Houston & Texas Central Railway Company, be stayed from surrendering the property in his charge until further orders of the court.

On March 9, 1892, Hon. Howell E. Jackson, Associate Justice of the Supreme Court of the United States, assigned to the Fifth Judicial Circuit, made an order in a certain cause then pending in the Circuit Court for the Eastern District of Texas, directing the property then in possession of said receiver to continue in his possession, control and management pending the hearing and decision of said cause in the Supreme Court.

The two last aforesaid orders were, by an order entered on April 4, 1893, in all things set aside by the judges of the Fifth Judicial Circuit of the United States, and an order made and filed on April 10, 1893, in which, among other things, it was ordered, adjudged and decreed in effect that, as he had been heretofore directed to do, the said Chas. Dillingham, receiver, should turn over and deliver to said Frederick P. Olcott, or his assigns, the railroads and property purchased by him at the sale made under decree of foreclosure of said court in said cause, etc.; and that such order should operate to put such purchaser of said property or his assigns, in the lawful possession thereof, etc.

In pursuance of said order and decree all the property now owned by the Houston & Texas Central Railroad Company, and all its railroads, including the portion upon which the damage to plaintiff's property is alleged to have occurred, was, on April 10, 1893, formally turned over and delivered to said Olcott and his assigns, the Houston & Texas Central Railroad Company, which said company has owned, possessed, controlled and operated said property since said April 10, 1893, to the time this cause was tried in the court below.

On December 24, 1890, it was ordered by the United States Circuit Court for the Eastern District of Texas that all claims and demands of whatever nature arising out of the operation of the property purchased

by Frederick P. Olcott, at said sale upon which any lien upon the funds derived from said sale, or upon money or property which came into the hands of the receiver, or upon property sold to said Olcott is claimed, * * * shall be presented and prosecuted by intervention in the court making such order prior to October, 1, 1893, etc.

The contract between appellant and the Galveston, Harrisburg & San Antonio Railway Co. was in writing and provided that said company should transport his ninety head of cattle from Weimar, Texas, over its road to Houston, Texas, and there deliver the same to the Houston & Texas Central Railroad Co. for transportation to St. Louis, and it restricts company's liability to its own line. The contract upon which the other appellant is sought to be held, is dated Houston, April 7, 1893. It was made between Chas. Dillingham, receiver of the Houston & Texas Central Railway Co., of the first part, and Nat Holman, of the second part, and provides for the shipment of the five carloads of cattle from Houston to Denison, Texas. It further stipulates that the party of the first part shall in no manner be responsible for any loss or injuries occurring to the stock after the same has left the line of the receiver of the Houston & Texas Central Railway Co. It contains other stipulations not necessary under our view of the case to recite. Nor do we deem it necessary for us to make any finding as to whether appellant sustained any damage from injury to said cattle.

*Conclusions of Law.*—Appellant's second and third assignments of error are as follows:

"2. · The court below erred in taking this cause from the consideration of the jury, and in charging them to return a verdict for defendants.

"3. The court erred in not granting plaintiff a new trial upon the grounds that the charge of the court ordering and directing a verdict for defendants, was contrary to law and contrary to the evidence." The grounds in the motion for a new trial are: "(1) The verdict and judgment of the court as rendered under the instructions of the court. were and are contrary to the law and the evidence; (2) The charge of the court was and is contrary to the law and evidence in the cause."

The appellee, Houston & Texas Central Railway Co., contends that the assignments should not be considered, because there was no motion for a new trial which complied with the rules and requirements of the court in which the supposed motion was made, and that it was not such a motion as would form or afford a basis for granting a new trial, or for the assignment of errors for the consideration of this court; and, if the so-called motion for a new trial should be held sufficient for any purpose, the assignments are so general in their terms, and so void of specifications that this court cannot consider them. We will consider the assignments, and, as an apology for doing so, will call attention to the opinion of the Supreme Court in Western Union Telegraph Co. v.

Mitchell, 36 S. W. Rep., 4, and our observations thereupon in Maury v. Smith & Co., decided this term.

If there is a conflict of testimony upon issues arising in a case, and there should be another issue, which, if established, would absolutely defeat the plaintiff's right to recover regardless of how the other issues of fact are determined, and if such crucial fact should be admitted or established beyond controversy, all of the other issues of fact necessarily become immaterial, and the court should withdraw them from the jury and instruct a verdict on the admitted or established fact which is conclusive of the case. If, then, the fact that the Houston & Texas Central Railway Company's road was in the hands of and operated by a receiver, and appellant's cattle were received under a contract of shipment made with him as such between the periods when all the property of the company was sold to Olcott and the delivery of such property to him or his assignee, which are uncontroverted,—there being no pleadings or evidence to show betterments or permanent improvements on appellee's property with funds derived from the operation of the road after the sale to Olcott and before the delivery of the property by the receiver to appellee,—will defeat appellant's cause of action, all the other evidence becomes immaterial and it was the duty of the court to instruct a verdict for the appellant.

As receivers of a railway, who are vested with its absolute control and management, are liable for injuries resulting from negligence in operating the road to the same extent that the company itself might have been held liable, the corporation itself cannot, in the absence of any liability created by statute, be held responsible for the negligence of the servants of a receiver operating the road. Ryan v. Hays, 62 Texas, 42; Hicks v. Railway, 62 Texas, 38; Railway v. Ormond, 62 Texas, 274; High on Receivers, sec. 396; Beach on Receivers, sec. 721. Damages occurring while a railroad is operated by a receiver are a part of the receiver's expenses incurred in running the road, and are payable out of its current earnings, which, if diverted by the receiver and placed in permanent improvements, or turned over to the railroad company after the termination of the receivership, render the company responsible to the extent of such earnings so diverted. Railway v. Johnson, 76 Texas, 421. It is upon this ground that a railroad is held liable for damages occurring while it was operated by a receiver. The Houston & Texas Central Railroad Co. can only be held liable to appellant to the extent of improvements made with funds, or of funds received, derived from the operation of the road after the title was vested in Olcott, who purchased at the sale. Railway v. Crawford, 31 S. W. Rep., 177; Crawford v. Railway, 33 S. W. Rep., 534; Railway v. Bowles, 32 S. W. Rep., 880; Dillingham v. Kelley, 8 Texas Civ. App., 113, 27 S. W. Rep., 806. Therefore, there being neither pleadings nor evidence to show that there were any earnings of the road after it was sold to Olcott and while in the hands of the receiver, the appellant was not en-

titled to recover, and the court properly instructed the jury to return a verdict for the defendants.

The other assignment of error complains of the court's refusal to hear certain evidence on the $100 item of damages alleged against the Galveston, Harrisburg & San Antonio Railway Co. It will be noticed from our statement that an exception was sustained to that part of the petition setting up this item, and, as the petition was not amended, and there is no error assigned to the ruling of the court in sustaining the exception, the action of the court in rejecting the testimony need not be further considered.

The judgment is affirmed.                                    *Affirmed.* ·