ANSLEY VS McLOUD ET AL.

Opinion delivered October 19, 1904.

1. *Indian Lands—Improvements—Forfeiture of by Act of Indian Nation.*

An act of the Choctaw council forfeiting to the nation improvements of

a citizen of the United States, on lands in said nation, is of no validity, in the absence of express authority by treaty or some act of Congress.

2. *Receivers—Actions Against After Discharge.*

After the discharge of a receiver no action can be maintained against him, as such.

3. *Pleading—Objection to Jurisdiction—Demurrer with Answer.*

Under Sec. 5054 Mansf. Dig. (3259 Ind. Ter. Stat.) a demurrer may be filed with an answer and although not urged upon the consideration of the court it saves the question of jurisdiction of the court, so that an objection upon that ground may be made, for the first time on appeal, and not come too late.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Suit by W. H. Ansley against J. W. McLoud and others.

Judgment for defendants. Plaintiff appeals. Affirmed.

On December 13, 1895, plaintiff (appellant here) filed his complaint in equity against the defendant (appellees here), and represents: That he is a Choctaw Indian by blood, and that defendants are citizens of the United States. That the Choctaw Coal & Railway Company is a corporation, and by act of Congress approved February 18, 1888, was authorized to do business in the Indian Territory. On the 19th day of September, 1890, on petition of Langhorne Wister, the court appointed receivers for said company, who failed to qualify, and on January 8, 1891, upon petition of said Wister and the Girard Life Insurance, Annuity & Trust Company of Philadelphia, as trustee, the court appointed defendant F. I. Gowen and one E. D. Chadick as receivers of said company. On June 14, 1893, Chadick resigned,

and J. W. Throckmorton was appointed in his stead. Thereafter said Throckmorton died, and defendant Gowen was retained as sole receiver. That Fritz Sittel was an intermarried Choctaw citizen, and up to about the year 1891 occupied the tract of land upon which South McAlester is situated, as a homestead. In the year 1890 said Sittel and wife platted said town. Upon said plat, the premises, the right of possession to which, and the title to the improvements thereon, which are in controversy in this suit, are designated and described as Schedules A, B, and C. That said Sittel and wife made a trust deed to one Edwin D. Chadick, as trustee, under which they pretendedly erected, or caused to be erected, buildings and improvements upon the lots in controversy. That the same were erected with money furnished by said Chadick or his associates, and with the intent that they should belong to him and his associates. That they were citizens of the United States, and said trust deed was contrary to the laws of the Choctaw Nation and of the United States, and was made to evade said laws, and to enable noncitizens to actually own, possess, and control improvements upon land in the Choctaw Nation. On October 30, 1888, the principal chief of the Choctaw Nation approved a law entitled, "Claims and Improvements, § 3, Non-Citizen Improvement": "(1) Be it enacted by the general council of the Choctaw Nation assembled: All non-citizens not in the employ of a citizen of the Choctaw Nation, and not authorized to live in the Choctaw Nation under the provisions of existing treaty stipulations, who have made or brought improvements in said nation are hereby notified that they are allowed to sell their so-called improvements to citizens, and if such non-citizens fail to comply with this section, then it shall be the duty of the sheriffs of the counties in which such improvements may be located to advertise the same for sale in thirty days; and sell the same at the appointed time to the highest Choctaw citizen bidder for cash; one-half of which shall be paid into their respective treasuries, and the other half into the

national treasury, provided, however, that if any such non-citizen fail or refuse to deliver the possession of such an improvement, he shall be reported by the sheriff of that county to the principal chief, and by said chief to the United States Indian agent, to take proper steps for the removal and prosecution of such offender under section 2118 of the Revised Statutes of the United States. Provided further, that a notice of sale shall be posted by the sheriff in three public places in the county, which shall be legal notice to all persons against whom this law may operate." Laws Choctaw Nation 1894, p. 248. That said railway company and its receivers caused to be erected said improvements on said lots, and Chadick and his associates conspired with Sittel and wife to build a town in the Choctaw Nation, to be owned by noncitizens of the Choctaw Nation, contrary to the laws of said nation and of the United States. That Chadick had but one associate, and that was the said railway company, and when said company was placed in the hands of receivers said defendant Gowen associated himself with said Chadick, and said improvements were constructed long after the approval of the aforesaid act of the Choctaw Nation, and in defiance thereof: That said defendant McLoud during all the time was attorney for said railway company and said receivers.

On October 14, 1890, a law was passed and approved by the Choctaw Nation, in part as follows:

"Whereas, certain officials of said Choctaw Coal and Railway Company are said to be engaged in speculating in town sites under illegal leases from Choctaw citizens, and are erecting houses, offices, etc., on said leased lands, and are renting them. And whereas, said leases of land are in direct violation of law:".

"Sec. 2. Be it further enacted, that the national agent is hereby instructed to demand of the officials of the Choctaw

Coal and Railway Company that they file, within sixty days, evidence that they are not connected, directly or indirectly, with the town site syndicates; also a copy shall be filed with the principal chief. If they fail to file such evidence, the national agent shall declare their coal leases null and void and so notify them.

"Sec. 3. Be it further enacted, that the leases for thirty years are hereby declared to be illegal and null and void.

"Sec. 4. Be it further enacted, that the sheriff of each county is hereby instructed to at once diligently inquire into all such illegal leases and report the same to the principal chief, and that he cause any improvement erected by noncitizens, corporate or individual, by virtue of said illegal leases, to be advertised by sale in the manner provided by law."

"Sec. 6. Be it further enacted, that a copy of this act be forwarded to the president and treasurer of said Choctaw Coal and Railway Company by the national secretary, and that this act shall take effect and be in force from and after its passage.

"Approved Nov. 14, 1890. W. N. Jones, P. C. C. N."

That a copy of said act was served on said railway company, and that thereafter said improvements were erected, with full knowledge that it had no right so to do. On October 23, 1890, said trust deed was executed by Sittel and wife to said Chadick, as trustee, for the pretended purpose of securing $45,000, to be advanced by Charles Hartshorne and Wm. C. Alderson, of Philadelphia, and their associates. On October 4, 1895, in a cause No. 969, entitled, "Chadick, Trustee, vs Gowen, Throckmorton, et al., Receivers," it was decreed that said railway company had advanced for the erection of buildings

in South McAlester the sum of $53,220.96. That McLoud was substituted for Chadick as trustee. That Hartshorne and Alderson had advanced no money, and did not know that said deed of trust was executed or said money was advanced until long after said buildings were completed, whereby it was settled that said railway company was the sole beneficiary in said deed. That said McLoud seized possession of said improvements as trustee for said railway company, and claims title to same, and the right permanently to occupy the land on which the same are situated, and was occupying the same in 1895, prior to the sale of said improvements by the Indian sheriff, as hereinafter stated, contrary to the laws of the Choctaw Nation and of the United States. That said McLoud, as trustee, defendant, has advertised for sale on December 30, 1895, said property in controversy, under said pretended conveyance from Sittel and wife, and under and by virtue of a decree of court of date October 4, 1895. Said notice of sale is false, for the reason there was no order of court made on October 4, 1895, directing the sale of said property. That defendants well knew that any rights claimed by them under said deed of trust could not be enforced against plaintiff, and they are trying to do by notice and sale outside of court what they know to be without warrant of law. That said McLoud, as trustee, has sold property not described in this suit, and, unless restrained by injunction, will sell the property in controversy to many different persons, and will thus cause many lawsuits, and expense to plaintiff, which can be prevented by injunction. That the property thus advertised is of the reasonable value of $60,000, and a monthly rental of $300. On September 1, 1893, said railway company, through its receivers, brought suit in ejectment against J. T. Miller for possession of property similarly situated to the property in controversy herein, and in said suit alleged that in 1889 said railway company advanced to said Chadick, its manager, and also agent of Sittel, the Indian occupant, certain sums of

money to erect buildings on lots therein described, with full knowledge of said Sittel, and for his benefit, to the extent they would enhance the value of adjoining lots, whereby it appears and plaintiff alleges the same to be true, that said railway company advanced said money voluntarily for the purpose of obtaining the occupancy of said land, to evade the laws of the United States and the Choctaw Nation, and same was advanced by said railway company, with its full knowledge and consent, and to build a town at South McAlester off its right of way. That the property in controversy is about 400 feet north of railway company's right of way. The act of Congress (Act Feb. 18, 1888, c. 13, 25 Stat. 38), after designating the amount of land said company could take for its right of way, in section 10, provides "that the said Choctaw Coal and Railway Company shall accept this right of way upon the express condition, binding upon itself, its successors and assigns, that they will neither aid, advise nor assist in any efforts looking toward the changing or extinguishment of the present tenure of the Indians in their land, and will not attempt to secure from the Indians any further grant of land, or its occupancy, than is hereinbefore provided. Provided, that any violation of the condition mentioned in this section shall operate as a forfeiture of all the rights and privileges of said railway company under this act." That the contract alleged and the money advanced were not within the scope of said company's grant by said act of Congress, and were ultra vires and void. That the claim of defendants, as alleged, against the property in controversy, is against the law and against public policy. That on or before the 1st day of May, 1895, and since, defendant McLoud has claimed possession of the property in controversy, and has been renting the same to noncitizens, in violation of the laws of the United States and the Choctaw Nation. That on June 24, 1895, the Indian sheriff, through his deputy, Wm. Ansley, under and by virtue of the laws of the Choctaw Nation, advertised and sold the improvements in

controversy on the lands described. That plaintiff became the
purchaser of a portion, and by conveyance from other purchasers
became the exclusive owner of said improvements, and became
entitled to the occupancy of the lands upon which they were
situated. That Sittel and wife long since ceased to assert any
claim to said land or improvements, and, if they ever claimed to
own said improvements, long since abandoned their claim.
Plaintiff refers to laws of Choctaw Nation appertaining hereto,
and asks the court to take judicial notice of and consider them in
connection herewith. Said Sittel and wife, by reason of the
premises, lost, relinquished, and forfeited all right to the exclu-
sive possession of said lands and the improvements thereon, and
became subject to the control of the authorities of the Choctaw
Nation, and were so subject at the time of the sale by the Indian
sheriff, and plaintiff became the purchaser thereof as aforesaid.

"The premises considered, plaintiff says that he is entitled
to be quieted in the possession of said premises, and in the title
to the improvements thereon, for the reason: (1)   That he is
a bona fide purchaser for value as aforesaid. (2)   Because said
pretended deed from said Fritz and Malvina Sittel to Edwin D.
Chadick and associates was executed and delivered by them
with the intention to evade the laws of the Choctaw Nation, and
was contrary to the laws of the Choctaw Nation, and contrary to
the treaties between the Choctaw Nation and the government of
the United States, and should not be upheld. (3)   Because
neither the said J. W. McLoud, trustee, nor Francis I. Gowen,
receiver, have any right, under the treaties of the United States
or the laws of the Choctaw Nation, to have and maintain said
property in the Choctaw Nation. (4)   That the said Choctaw
Coal & Railway Company, not being one of the beneficiaries
named in said deed of trust, has no contract with said Fritz and
Malvina Sittel, conveying to it a lien or other benefit upon or in
the property aforesaid, and cannot be substituted in said trust

deed in place of the beneficiaries named therein, having no privity thereby with said Sittels. (5) The beneficiaries named in said deed of trust having disavowed any claim thereunder, and declared that they advanced nothing thereunder, and never accepted the same, or knew of its execution and delivery, the same is absolutely void. (6) The said Choctaw Coal & Railway Company having been restricted in the act giving it the right to be in the Indian Territory, and to the occupancy of the lands therein specified, and therein specifically denied, upon penalty of forfeiture of all their rights, the right to make any effort to extend its occupancy, the advancement or investment of money by it or its agents in the improvement of Indian lands was not only ultra vires, but actually prohibited, and consequently void and unenforceable."

Plaintiff prays for temporary injunction against sale, and that on final hearing same be made perpetual, and that said deed of trust be canceled and annulled so far as affects his rights, quieting plaintiff's title to said improvements, and decreeing to plaintiff possession of said property; that all right be decreed out of defendants and vested in plaintiff, and for costs.

On December 4, 1899, defendants filed demurrer and answer, and deny each and every allegation stated in said complaint, except as expressly admitted. Defendants admit the allegations of complaint in regard to the decree in the case of Chadick, Trustee, vs Gowen, et al., and allege: That, prior to the execution of the deed of trust and the erection of the improvements spoken of, Chadick was the manager of the railway company, and entered into an agreement, not as manager of said company, but personally, with Fritz Sittel and Edward Sittel, by which Chadick was to receive one-third of the profit from the sale and rental of land at South McAlester, the ownership of which was claimed by Fritz Sittel. The same was to be treated

as a town site, and said Chadick, without the knowledge of Hartshorne and Alderson, and without the knowledge of said railway company, advanced large sums of money belonging to said company for the erection of the improvements mentioned. That after the erection of said improvements, in the case of Chadick, Trustee, vs The Receivers of Said Company, the said Chadick endeavored to enforce the rights he claimed to have secured under said deed of trust, but the same was decided adversely to him, and in said suit it was judicially ascertained that Chadick and the Sittels entered into the agreement mentioned, and the deed of trust, for their own private gain, and to defraud the beneficiaries in said deed and the railway company, whose money was advanced by Chadick without its consent. That, by advancing the money as aforesaid, said railway company became entitled to an equity in the premises, and was entitled to hold same to collect money to reimburse itself. Defendants ask the court to impress said equity upon said premises in favor of said company and its trustee, and say that Chadick and Sittel and wife were parties to said suit, and bound by its decree; that the money advanced has never been collected. Defendants say that the money advanced by Chadick was not known by them to be for an unlawful purpose, and that there was no intent on the part of said railway company to violate any law of the Choctaw Nation or of the United States. Defendants say plaintiff is attempting to practice a fraud upon the jurisdiction of this court in this suit, by asserting a claim which is fraudulent both in law and in fact; that the sale by the Indian sheriff was void, because in violation of an order of court prohibiting said sale on June 24, 1895, notice having been served two days before on said sheriff that application would be made for order on said day; that said sale was in violation of law, because made for Wm. Ansley, the deputy sheriff making the sale, and because no consideration was paid for the deeds executed by the Indian sheriff; that the sale was made on credit, which was in violation

of the Choctaw law. Defendants further say that they are all citizens of the United States, and that, under the laws and treaties of the United States, the Choctaw Nation has no jurisdiction over either the person or the property of noncitizens; that the sale was made and forfeiture declared without any notice to these defendants. Defendants say said sales were invalid, and ask that they be annulled and held for naught, and that they recover costs.

On December 14, 1901, plaintiff filed his reply to the allegations of defendants in their answer, and specifically denied each and every allegation therein.

On May 29, 1902, the court, after hearing all the evidence, finds that the plaintiff should take nothing by this suit, and renders the following decree: "It is therefore by the court, considered, ordered, adjudged, and decreed that the plaintiff herein, W. H. Ansley, take nothing by this suit; and it is further ordered and decreed that the defendant, F. I. Gowen, receiver, have and recover of and from the plaintiff all his costs herein laid out and expended, to all of which plaintiff excepts, and prays an appeal to the United States Court of Appeals for the Indian Territory, which is by the court granted."

*Redwine & Jones* and *Moseley & Smith*, for appellant.

*O. B. Stuart*, for appellees.

TOWNSEND. J. The appellant has filed the following assignment of error: "That it is therein adjudged and decreed that plaintiff take nothing by this suit, and that F. I. Gowen receiver, recover from plaintiff all his costs herein laid out and expended, the effect of which is to dismiss plaintiff's suit, whereas said decree should have sustained said action, and granted the

relief sought." Appellant says the real question in the case is, "Was there a forfeiture to the Choctaw Nation of the improvements in question?" It is conceded by the plaintiff that the defendants are citizens of the United States, and in possession of the property in controversy. The forfeiture claimed by appellant is by virtue of an act of the Choctaw Council. The first question that presents itself for our consideration is, under and by virtue of what treaty or act of Congress did the Choctaw Council obtain authority to pass an act forfeiting the property in possession of noncitizens or citizens of the United States? Section 7 of the treaty of 1855 (11 Stat. 612) is as follows: "So far as may be compatible with the Constitution of the United States and the laws made in pursuance thereof, regulating trade and intercourse with the Indian tribes, the Choctaws and Chickasaws shall be secured in the unrestricted right of self-government and full jurisdiction over persons and property within their respective limits, excepting, however, all persons with their property who are not by birth, adoption or otherwise citizens or members of either the Choctaw or Chickasaw tribe, and all persons not being citizens or members of either tribe found within their limits shall be considered intruders and be removed from and kept out of the same by the United States Indian agent, assisted if necessary by the military, with the following exceptions, viz.: Such individuals as are now or may be in the employment of the government and their families, those peacefully traveling or sojourning in the country or trading therein under license from the proper authority of the United States, and such as may be permitted by the Choctaws or Chickasaws with the assent of the United States Indian agent to reside within their limits without becoming citizens or members of either of said tribes." This gives the tribes full jurisdiction over persons and property within their respective limits, except all persons who are not, by birth, adoption, or otherwise, citizens of either tribe. Article 43 of the treaty of 1866 (14 Stat. 95) is as follows: "The

United States promise and agree that no white person except officers, agents and employees of the government and of any internal improvement company, or persons traveling through or sojourning in said nations or either of them, shall be permitted to go into said territory, unless formally incorporated and naturalized by the joint action of the authorities of both nations into one of the said nations of Choctaws or Chickasaws, according to their laws, customs or usages, but this article is not to be construed to affect parties heretofore adopted, or to prevent the employment temporarily of white persons who are teachers, mechanics, or skilled in agriculture, or to prevent the legislative authorities of the respective nations from authorizing such works of internal improvement as they may deem essential to the welfare and prosperity of the community, or to be taken to interfere with or invalidate any action which has heretofore been had in this connection by either of said nations." It thus appears that certain classes of noncitizens were allowed to come in the Choctaw Nation, but in no provision of any treaty that our attention has been called to is there any authority given to these tribal governments to enact any legislation that shall affect or control noncitizens or their property. Is not this absolutely essential before any validity can be given to, the act of the Choctaw Council? Appellant seems to rely on the decision of Hockett vs Alston, 3 Ind. Ter. Rep. 432, (58 S. W. 676). Unfortunately for plaintiff, this decision was reversed by the Circuit Court of Appeals in 110 Fed. 912, in which the court says: "No judgment, order, or execution from any court authorizing the sale of this property by the sheriff of the Cooweescoowee district was pleaded or proved. There was therefore no evidence that this sheriff had any more power then any other stranger to sell and convey the property here in controversy. A sheriff is nothing but the agent of the government to do the acts which the laws authorize him to perform, and his acts, without proof of his lawful authority to perform them, are as ineffective in judicial proceedings as the acts

of a private agent without proof of authority from his principal. * * * There was no evidence of any execution, process, order, or judgment of any court which directed him to sell or convey this property. The record is entirely barren of any evidence of any authority on his part to make either the sale or certificate thereof, and that instrument constitutes no evidence of any title or right to the possession of the improvements in controversy. A sheriff's deed, unwarranted by any law or order or process of a court, is not evidence of any title or right of possession in its grantee in the property which it describes. Counsel for the plaintiff below devote much time and space to an endeavor to support the contention that the defendants are unlawfully in the possession of these improvements; that they are trespassers and intruders upon this land in violation of the laws of the United States and of the Cherokee Nation. It is unnecessary to the decision of this case to consider or decide whether they are trespassers or not. If they are, there is no evidence here that the plaintiff has any right to disturb them. Under the record before us, she also seeks to intrude upon this property without right under a sheriff's certificate of sale issued without warrant of law or order of court. The possession of a trespasser or of an intruder is superior to, and must prevail over, the claims of all who have no superior legal rights to the title or the possession."

Appellant insists in his brief that the Circuit Court of Appeals sustained in every particular the decision of this court, except as to the fact that the Indian statute relied on must be pleaded and proven. On the other hand, the court say: "* * It is unnecessary to the decision of this case to consider or decide whether they are trespassers or not." Without express authority by treaty or some act of Congress empowering the Choctaw Council to enact any such legislation pertaining to citizens of the United States and their property, we are of the opinion that said act of forfeiture is without validity.

The action against Francis I. Gowen, as receiver, was improperly brought, for the reason he had been discharged as such receiver for months prior to its institution.   After the discharge of a railroad receiver, no action can be maintained against him where the property formerly in his custody has been transferred to a purchaser under an order of the court in foreclosure proceedings.   Farmers' L. & T. Co. vs Central R. Co. (C. C.) 7 Fed. 537; Davis vs Duncan (C. C.) 19 Fed. 477; New York Tel. Co. vs Jewett, 115 N. Y. 166, 21 N. E. 1036; Bond vs State, 68 Miss. 648, 9 South. 353; Ryan vs Hays, 62 Tex. 42; Brown vs Gay, 76 Tex. 444, 13 S. W. 472.

Appellant has cited authorities to show that objection to the jurisdiction comes too late when made in this court.   But defendants filed a demurrer at the same time they filed their answer, and under section 5054, Mansf. Dig. (Ind. Ter. St. 1899, § 3259), it is provided as follows:   "When a party files a demurrer with his answer or reply, the demurrer must be presented for the consideration of the court at or before the first calling of the cause for trial after the filing of the same.   If he fails to do so, the demurrer shall be regarded as waived as to all points except the jurisdiction of the court, and that the pleading demurred to does not state facts sufficient to constitute a cause of action, or a defense, counterclaim, or set-off."

The relief sought in this action, when considered in the light of the facts established by proof, is, to say the least, most remarkable.   The sheriff, who, under the statute, claims the right to declare a forfeiture of the title to property of the value of $60,000, and to sell the same, pretends to advertise and sell, and sells to his own son, who becomes the purchaser for the sum of $270, of which amount $1 cash is paid, and a note given for the balance of the purchase money, to become due when the son gets possession.   In the meantime the note passes to each suc-

cessive sheriff, waiting the recovery of a judgment for possession. This is an unconscionable demand, and not one that, in our judgment, commends itself to a court of equity. It is therefore the opinion of this court that the judgment of the court below should be, and it is hereby, affirmed.

RAYMOND, C. J., and GILL, J., concur.